The Committee on Legal Ethics of
The West Virginia State Bar

*v.*

William Bernard Smith

(No. 13308)

Submitted January 23, 1973.  Decided February 27, 1973.

*Campbell, Love, Woodroe & Kizer, David A. Faber,* for Legal Ethics Committee.

*William Bernard Smith,* for defendant.

Per Curiam:

This is a proceeding instituted by the Committee on Legal Ethics of the West Virginia State Bar, pursuant to

its authority under Part D, Article VI of the By-Laws of the West Virginia State Bar against William Bernard Smith, an attorney at law, living and practicing his profession at Logan, Logan County, West Virginia, and an active member of the West Virginia State Bar. The Committee seeks an order of this Court suspending the license of Smith to practice law in this State for a period of thirty days, or in the alternative, to administer to him a public reprimand and to require Smith to reimburse the Committee for its expenses in connection with the proceedings against him.

The complaint, together with the verified report of the Committee, as an exhibit, was properly filed in this Court on December 14, 1972. Upon the complaint this Court on December 18, 1972, issued a rule returnable January 23, 1973, commanding Smith to appear before the Court at that time to show cause against the entry of an order suspending his license to practice law in this State for a period of thirty days or, in the alternative, administering to him a public reprimand.

Upon the return day of the rule, this proceeding was submitted for decision upon the complaint and its exhibit, consisting of the Committee's report, the answer of the defendant and its exhibits, the testimony of witnesses, including Smith in his own behalf, adduced at a hearing before the Committee on April 7, 1972, in Logan, Logan County, West Virginia, and the numerous exhibits filed with the testimony at such hearing, and upon written briefs filed by counsel for the Committee and by Smith, who appeared in his own behalf.

The facts in this case, with a single exception to be mentioned hereafter in this opinion, are undisputed.

Charles Doster, an attorney from the State of Alabama, in August, 1969, exchanged letters with the defendant Bernard Smith, an attorney in Logan, West Virginia, resulting in an agreement whereby Smith would represent Doster's client in a case in Logan County. Doster's client was Lucien Lentz, also a resident of Alabama, whose

daughter owned a small amount of stock in the Logan Coca Cola Bottling Company. She and her predecessors had owned this stock for many years. Since at least 1960, Lentz had attempted through Doster to obtain an accounting from the Company and the possible profitable sale of his daughter's stock. The owners of the Logan Coca Cola Company refused to give a satisfactory accounting, declared few dividends, and in other ways conducted their relations with the Alabama stockholders in such a way as to arouse the suspicion of the Alabamians. The retention of Smith, the Logan County attorney, was an attempt to bring the matter to a head. As a culmination of the August correspondence between Doster and Smith, Doster sent Smith a check for $900.00 on August 28, 1969, with the instructions to institute an action in the Circuit Court of Logan County. There was an agreement that if the case were favorably disposed of without resort to litigation, Smith would be paid on a different basis.

During the period of time following Doster's letter dated August 28, 1969 and until July 22, 1970, Doster wrote Smith a total of three letters. In the first two letters, he inquired of the status of the case, requesting that it be expedited. On the third occasion, July 22, 1970, he indicated to Smith that his client no longer desired Smith to pursue the matter and requested that Smith return the $900.00. After July 22, 1970, until June 17, 1971, Doster wrote Smith a total of ten additional letters, asking for the return of the $900.00. During the entire period from August 28, 1969 until June 17, 1971, Smith wrote Doster a total of four times. On the fourth occasion, he returned $600.00 of the fee and retained $300.00 which he claimed for services. The defendant Smith introduced evidence that he did not receive three of Doster's letters, namely, those of February, March and April, 1971. In Smith's first three letters to Doster, he explained that he had been ill and that he had several other personal problems which had prevented him from taking action.

At no time during the period of time involved did the defendant take any action to prosecute the Lentz claim.

He instituted no suit; he did not inform anyone connected with the Logan Coca Cola Bottling Company that he had been retained; he did not seek an accounting; he did not attempt to find any information on which to file a suit or to negotiate settlement.

The defendant established clearly that during this entire period of time, he had a number of personal problems which were unusually time consuming. In the latter part of 1969, he was attorney in a complicated case involving the City of Williamson in Mingo County. During the January, 1970 Term of the Circuit Court of Logan County, he had an unusually heavy criminal docket. In April, 1970, he was indicted by the Kanawha County Grand Jury. On July 20, 1970, he was tried in the Intermediate Court of Kanawha County upon a matter unrelated to this hearing, the trial lasting six days and ending in a hung jury. Beginning July 20, 1970, he attended a Special Session of the Legislature in Charleston for one week. On September 1, 1970, he was admitted to Charleston Memorial Hospital for chest pains, and he testified that he was ordered not to work for thirty days by his physician. In October, 1970, he again experienced chest pains and testified that Dr. Walker ordered him to be inactive until January, 1971. In January, 1971, he attended the Regular Session of the Legislature in Charleston. On February 2, 1971, he was tried in the District Court for the Southern District of West Virginia in Huntington upon a matter unrelated to this hearing, the trial ending in acquittal. From June 1, 1971 to July 11, 1971, he was engaged in a second trial in Kanawha County, which also ended in a hung jury. In August, 1971, he was tried in federal court in a case involving election irregularities.

All of the facts documented in this matter emanate (1) from the correspondence between the two attorneys; (2) from the defendant's testimony relating to his involvements which occupied his time during this period; and (3) from all the testimony adduced at the hearing

concerning Smith's activity, or lack of it, in prosecuting his client's case.

Doster in his letter to Smith of April 30, 1971, advised Smith that he must have the $900.00 returned or he would be forced to take legal action to recover. When Doster received no reply from Smith, he wrote a letter dated May 27, 1971, advising Smith that he was preparing a petition to present to the West Virginia State Bar regarding Smith's activities, but that if Smith refunded the $900.00, he would refrain from filing the petition. On June 14, 1971, Smith wrote Doster, and returned his check for $600.00, and offered him a detailed statement for the services he had performed for the remaining $300.00. On June 17, 1971, Doster returned the check to Smith stating that he had already instituted proceedings before the Legal Ethics Committee of the West Virginia Bar.

At the hearing, Doster stated categorically that at any time prior to the institution of these proceedings he would have refrained from having this action commenced if Smith had repaid the $900.00. At the hearing, he requested the Committee to assist him in regaining his client's money, and was advised by the Committee that they had no powers to act as a collection agency.

Canon 15 of the Code of Professional Ethics provides in part as follows:

> "The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability', to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense."

Canon 21 states:

> "It is the duty of the lawyer not only to his client, but also to the courts and to the public to be punctual in attendance, and to be concise and direct in the trial and disposition of causes."

It is clear that a violation of these Canons may provide a basis for disciplinary action against any attorney. 7 C.J.S., *Attorney and Client,* Section 23, page 741; Annot., 96 A.L.R.2d 823, 829 et seq.; *In re Daggs,* 384 Mich. 729, 187 N.W.2d 227; *State ex rel. Oklahoma Bar Association v. Foster,* 454 P.2d 654 (Okla.); *In the Matter of Hendricks,* 155 W.Va. 516, 185 S.E.2d 336. In all of these proceedings, however, the burden is on the Committee on Legal Ethics to prove professional misconduct by full, preponderating and clear evidence. *In the Matter of Hendricks, supra.*

The Committee has proven a violation of Canons 15 and 21 of the Code of Professional Ethics by full, preponderating and clear evidence. The instructions from the referring attorney to the defendant attorney were clear. While they obviously allowed some latitude and judgment on the part of the defendant attorney, there can be no doubt that the defendant was employed for prompt and expeditious action. It is true that Doster, the referring attorney, wrote to Smith in February, 1970, (in reply to Smith's letter of apology) stating that he sympathized with and understood Smith's illness which was causing the delay. At the same time, however, he asked that the matter be expedited.

The facts, except for the disputed three letters of February, March and April, 1971, are undisputed. Reasonable doubt concerning the evidence should, of course, be resolved in favor of the attorney. *Committee on Legal Ethics of the West Virginia State Bar v. Pietranton,* 143 W.Va. 11, 99 S.E.2d 15. Pursuant to this rule, we view the evidence concerning the three letters in favor of the defendant. Even so, the defendant admittedly received eleven letters from the referring attorney, requesting a status report, expedition of the

case, or return of the fee. More important than just a numbers game in considering the amount of correspondence between the two attorneys is, however, the notice Smith received in the letters from Doster. Those letters clearly reveal that his client expected immediate action on the case, and that the defendant had failed to respond to these requests. There is no doubt that the defendant had many personal problems which were time consuming during the pendency of the Lentz-Coca Cola Bottling Company matter. This should be considered in mitigation of the defendant's procrastination and delay. It is equally true, however, that he never informed his client that he could not handle the case in the manner desired by the client. Nor did he suggest that he needed help from another attorney or that a delay in action was necessary. We believe the client's insistence on prompt action properly called for this or a similar course of action on the part of the defendant. Illness and other personal problems cannot excuse prolonged failure to attend to a client's business. Annot., 96 A.L.R.2d 823, 855-56. We feel that such illness or personal problems in connection with proper explanations to the client or some action taken by the attorney appropriate to the fact that he was ill or had other personal problems should mitigate and might excuse prolonged delay. As indicated, however, there is no evidence of this type of action by the defendant attorney. He was fully aware of his problems and should have taken action concerning his client's case under the existing circumstances.

The Committee on Legal Ethics also relies upon Canon 44 of the Code of Professional Ethics relating to refund of a retainer upon withdrawal from a case. It is true the defendant attorney should have used more dispatch in settling the matter of the $900.00 retainer paid to him. His conduct in this phase of the matter was obviously not above reproach. The facts of this case, however, do not clearly show a breach of Canon 44.

Some consideration must be given to the fact that Doster, the Alabama attorney, made threats to the defendant to use a petition to the Committee on Legal Ethics as a collection device. Doster was properly admonished by the chairman of the Sub-Committee conducting the hearing that this was improper. He indicated, however, at the hearing that he wanted to proceed with the petition against the defendant at that time even though the defendant might then have returned the $900.00. Nevertheless, there is some indication of spite on his part. The Court in the *Pietranton* case indicated that evidence appearing to be offered out of spite should be accepted with extreme caution and scrutinized most carefully. *Committee on Legal Ethics of the West Virginia State Bar v. Pietranton, supra.* We think, even with this admonition against spite evidence, that the evidence is clear. Once the alleged misconduct on the part of an attorney has come to the attention of the Committee, it must pursue it as it did commendably in this instance.

However, apparent spite or money collection motivation on the part of the referring attorney, under the peculiar circumstances of this case, should be regarded as a mitigating factor in favor of the defendant. It is to be noted that Doster's letter to the defendant, written some five months after referring the case to him, stated that he understood the delay. The defendant's personal circumstances, although not excusing his misconduct of procrastination and delay, should also be considered a mitigating factor.

For the reasons stated in this opinion, a public reprimand is hereby administered to the defendant William Bernard Smith.

*Public reprimand administered.*