197 S.E.2d 312 (1973)
The COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR
v.
Dean E. LEWIS.
No. 13323.
Supreme Court of Appeals of West Virginia.
Submitted May 16, 1973.
Decided June 26, 1973.
*313 Davis & Nesius, K. Paul Davis, John J. Nesius, South Charleston, for complainant.
Rudolph L. DiTrapano, Charles W. Yeager, Charleston, for defendant.
PER CURIAM:
This is a proceeding instituted by the Committee on Legal Ethics of the West Virginia State Bar, pursuant to its authority under Part D of Article VI of the By-Laws of the West Virginia State Bar against Dean E. Lewis, an attorney at law, living and practicing his profession at Charleston, Kanawha County, West Virginia, and an active member of the West Virginia State Bar. The Committee seeks an order of this Court suspending the license of Lewis to practice law in this State for a period of one year.
The complaint, together with the verified report of the Committee, as an exhibit, was properly filed in this Court on February 9, 1973. Upon the complaint, this Court on February 12, 1973, issued a rule returnable February 27, 1973, commanding Lewis to appear before the Court at that time to show cause against the entry of an order *314 suspending his license to practice law in this State for a period of one year.
Upon the return day of the rule the proceeding was continued generally, and on May 15, 1973, it was submitted for decision upon the complaint and its exhibits, including the testimony of witnesses adduced at hearings before the Committee on January 14, 1972, September 29, 1972, and November 17, 1972 (the latter two hearings consisting of numerous character witnesses testifying on behalf of the respondent), the numerous exhibits filed with the testimony at such hearings, and upon briefs and oral arguments of counsel for the Committee and for the respondent attorney.
The proceeding before the Committee resulted from an investigation conducted by a subcommittee of the Greenbrier County Bar Association as to the circumstances of the respondent attorney, whose practice primarily was in Charleston, representing plaintiffs in Greenbrier County. After the investigation, the Greenbrier County Bar Association filed a complaint against the respondent attorney with the Committee on Legal Ethics. Their investigation consisted primarily of interviews with certain widows of deceased miners who had become clients of the respondent attorney.
The principal case against the respondent attorney was developed at the January 14th hearing. At that time, the Greenbrier County Bar Association presented their investigation. The Ethics Committee took the testimony of the three widow-clients, Helen Johnston, Rowena Burdette and Hilda McQuain, and the testimony of the respondent attorney, Dean E. Lewis, and of his investigator, Eddie Lester.
The case involves contact of widows of deceased coal miners by Eddie Lester, an investigator employed by the respondent attorney, who was alleged by the Greenbrier County Bar Association to have solicited legal cases from the widows for the attorney. The miners were killed during a mine disaster in Hominy Falls, West Virginia on May 6, 1968. After Lester contacted three of the surviving widows of miners killed in this disaster, the widows employed the respondent attorney to pursue causes of action against certain defendants. Their actions were filed and tried by a jury in Greenbrier County by associates of the respondent attorney. The respondent was to participate in the division of any legal fees received.
Shortly after the disaster, the respondent had received a telephone call from some person in Boone County inquiring about the possibility of recovery for one of the non-fatal injuries of the disaster. The respondent could not remember the name of the person who called or who he was calling about nor the exact time of the call. He stated: "I have business over there (Boone County) and get calls from time to time, quite often about different legal things, and they asked me about a relative, as I recall, that was in this Hominy Falls disaster; and it was someone who had not gotten killedsome people survivedif there was any way that they could recover directly from the company. I advised them I didn't think there was any possibility, as I view Workmen's Compensation which incidentally for the record, I never did handlethat it would have to be something wilful, as I understood it, to get in." Question: "To boil down your answer, you did not have a named client or employment contract?" Answer: "That is exactly right, sir."
The respondent Lewis, testified that as a result of this telephone call, he dispatched Eddie Lester, a former Charleston city policeman who had been an investigator for him for some years, to Greenbrier County to investigate the Hominy Falls tragedy. Neither Lewis nor his investigator Lester could remember the details of instructions given to Lester by Lewis detailing the nature of the investigation, what was to be investigated, etc. It is clear from the testimony of all three clients and from Lester that during his investigation he contacted each one of the widows who subsequently employed Lewis as their attorney, as well as *315 the fourth widow who did not employ him. It was admitted by all that none of these ladies knew or had heard of Lewis or Lester prior to the time Lester visited their individual homes. There is a conflict of testimony concerning whether the investigator Lester had form contracts of employment with him at the time of his initial approach to each of the women. There was also a conflict of testimony regarding whether the contract was signed during the initial visit or was later mailed to Lester after a subsequent telephone call from the women to Lester asking him to recommend an attorney. It was undisputed that he left a business card with the women. The conflict in evidence in the first place is between the initial testimony of the women and Lester. Secondly, a conflict exists between the testimony of the women given on direct examination from their testimony on cross-examination. The three women gave different versions of Lester's visits and the subsequent employment of Lewis. Their testimony also varied from their statements previously given to investigators from the Greenbrier County Bar Association. According to one version of their testimony, Lester produced the contract during his initial approach to them and filled in blank spaces; they retained it, forwarding it later to Lester for Lewis's approval. Another version of the testimony was that he merely left his business card and the three women together at a later date decided to call or write Lester requesting him to recommend an attorney. It was then that he asked Lewis to take the cases and forwarded the contracts to the women.
Lester admitted that the handwritten completion of the contingent fee form contractthe filling in of percentage fee amounts, and other pertinent information, was in his handwriting, but testified that it was completed in his office. Lester testified he never carried form contracts for Lewis and that Lewis would have terminated him from employment had he done so. Lester indicated that he did not disburse Lewis's calling cards under his present tenure of employment, but had done so in previous years. Mrs. Johnston, Mrs. Burdette and Mrs. McQuain testified that they were well satisfied with the services of Mr. Lewis's associate counsel who handled the matter, but that they had no contact with Lewis. The testimony of these three witnesses was equivocal and they admitted on cross-examination that inasmuch as four years had passed since the incident of employing Lewis they could not remember with specificity the details of executing the agreement.
The investigator, Lester, and Lewis both testified that Lester, at the time of the incident under consideration, was an employee of Black, Inc. Black, Inc., is owned solely by the respondent Lewis. As an employee of this corporation, Lester performed investigative work for both Lewis and other attorneys in the Charleston area. The office of Black, Inc., was in the same suite of offices with Lewis, and they shared the services of one secretary. Lester had access to Lewis's stationery in addition to having stationery of his own. Lester was paid from a separate account maintained by Black, Inc.; Black, Inc., obtaining its funds from both Lewis and other attorneys. Lester was paid a fixed salary with no bonus arrangements.
Lester testified that he forwarded the form contracts and medical authorizations to each of the three clients; that he dictated and signed the letter forwarding these documents on accepting the employment; and that he had Lewis sign the contracts. Lewis corroborated this testimony. The three letters forwarding the employment documents from Lester to each of the three clients were identical. They were written on stationery with letterhead of "Law Offices of Dean E. Lewis" with the address and telephone number. The letters referred to the contract and blank medical authorizations which were enclosed. The letters stated that pursuant to their (the women's) request he had contacted the Veterans Administration concerning benefits *316 for them, and included an outline of Veterans Administration regulations possibly affecting the women. The letter concluded by saying that "we should be providing you additional information" and would be glad to assist in "handling your veterans claim, or any other matter". The letter was signed by Lester.
The complainant Ethics Committee concluded that Lewis's conduct is violative of Canon 27 and Canon 28 of the Code of Professional Ethics which was in effect at the time of the incidents complained of and is likewise violative of the provisions of DR 2-103 of Canon 2 of the Code of Professional Responsibility which replaced the Code of Professional Ethics effective July 1, 1970. These Canons, of course, relate to the improper obtaining of clients either by solicitation or other improper means. There is no doubt, of course, that an attorney may be suspended or disbarred for such improper conduct. State v. Smith, 84 W.Va. 59, 99 S.E. 332; 7 Am.Jur.2d, Attorneys at Law, Section 40, page 67.
The complainant Ethics Committee produced both direct and circumstantial evidence that the investigator, Eddie Lester, solicited the legal business of the three women involved. Respondent attorney Lewis produced both direct and circumstantial evidence indicating that he did not solicit the legal representation of the three women. An attorney, of course, is responsible for the conduct of his investigator in such circumstances when such investigator is conducting his affairs either with the explicit or implicit knowledge of the attorney. In re Mahan, 228 App.Div. 241, 239 N.Y.S. 392; In re Levine, 210 App.Div. 8, 205 N.Y.S. 589. In view of the long-standing relationship and unquestionable control over the working procedures of the investigator by the attorney, and reviewing all the circumstances of this case, there is sufficient inference of agreed agency to hold the attorney responsible for any action on the part of the investigator.
All of the direct evidence relating to solicitation, however, relied upon by the Ethics Committee consists of the testimony of the three widow-clients. It is true that each of these women testified at one time that Lester produced the form contracts on his first visit with them and discussed employment. However, they changed their testimony at the January 14th hearing and indicated either that the form contract was not produced then or that they did not remember whether it was or not. They all testified that the three of them subsequently contacted Lester by telephone or letter asking that he recommend an attorney. They indicated that prior to this contact there was no discussion by Lester relating to the employment of an attorney. Lester testified unequivocally that he made no solicitational approach and that he only recommended employment of Lewis as an attorney after the women contacted him specifically requesting such a recommendation.
In order to sustain a disciplinary charge against an attorney the evidence must be full, preponderating and clear. In the Matter of Hendricks, W.Va., 185 S.E. 2d 336; The Committee on Legal Ethics v. Pietranton, 143 W.Va. 11, 99 S.E.2d 15. It is also true that "all proper intendments are in favor of the attorney, and reasonable doubts or conflicts in the evidence should be resolved in his favor * * *." The Committee on Legal Ethics v. Pietranton, supra at 26, 99 S.E.2d at 23.
These are the majority rules governing the weighing of evidence in a disciplinary action against an attorney. 7 C.J. S. Attorney and Client, § 33(3), pages 784-785; 7Am.Jur.2d, Attorneys at Law, Section 67, pages 89-90. In the instant case not only is the testimony of the three women not clear, full and preponderating, but each of them directly contradicted themselves on crucial points concerning the issue of solicitation by Lester. Inasmuch as the Ethics Committee relied to such an extent on this testimony to prove its charge of solicitation, we do not feel that this burden *317 has been met. It is true that there is strong circumstantial evidence presented both by the Committee and by the respondent attorney which lends suspicion to the possibility that Lester may have solicited the legal business of the three women. On the other hand, there is some circumstantial evidence to the contrary: Lewis was phasing out his legal business at the time; strong character evidence by members of the Bench and Bar familiar with the attorney's practice indicating no such conduct in the past; respondent took no part in preparing or prosecuting cases; and that Lester apparently received no extra compensation.
Although the evidence adduced in this proceeding by the testimony of the three women evokes a suspicious set of circumstances, in view of the equivocating and contradictory nature of their testimony, such evidence could not sustain the charges of solicitation and stirring up litigation as being full, preponderating and clear evidence. The record amply demonstrates, however, by full, preponderating and clear evidence that the attorney's conduct of his legal affairs relating to the Hominy Falls matter was not entirely proper, and certainly not in the high standards required of an attorney in his relationship with clients and the public at large.
The respondent attorney admits that he directed his employee to investigate the mine accident without the benefit of "a named client or employment contract". While the evidence does not fully justify a finding that the actions of the investigator, acting under the direction of the respondent attorney, improperly influenced the widows in their decision to seek legal counsel or to employ the respondent attorney, the respondent attorney has violated the spirit of Canon 27 and Canon 28 of the Code of Professional Ethics by setting into motion an investigation which led to interviews which were not warranted by his professional employment or any personal relations. It is, of course, perfectly proper and often desirable for attorneys to have non-legal employees such as clerical and investigative employees as long as such employment is for the legitimate furtherance of the legal business of appropriate clients. It is improper, however, for such investigator, as he did here, to use the stationery of the attorney and correspond with potential clients on legal matters which should involve solely the professional discretion and judgment of the attorney. It is clear from the testimony of Lester, and it is not denied by the attorney, that the investigator completed parts of the employment contract retaining the attorney. These parts of the contract related to identifying plaintiff and defendant, the contingent fee amounts, and other matters. The blanks were filled in by the investigator in ink, obviously using his own discretion. These admitted acts of the investigator indicate an undenied permission for the investigator Lester to exercise the discretion and judgment in a crucial area of the attorney-client relationship which should be exercised solely by the attorney. Such conduct by the attorney constitutes a violation of the spirit of Canon 27 and Canon 28 of the Code of Professional Ethics. Viewing the testimony in a light most favorable to the attorney, it is apparent that the attorney should have reviewed this affair more carefully before accepting employment. It should have been apparent to him that there were suspicious circumstances concerning the activities of his investigator requiring him to reject the employment.
In view of the above, it is our opinion that the attorney should not be suspended. In addition to the vacillating nature of the clients' testimony, other circumstances dictate a mitigated discipline; the other principal circumstance being the uncontested evidence of good character and the respondent's reputation for practicing as an ethical attorney. It is our opinion, however, that the attorney should be publicly reprimanded for the improper conduct outlined in this opinion.
*318 For reasons stated in this opinion, a public reprimand is hereby administered to Dean E. Lewis and he is ordered to reimburse the Committee on Legal Ethics of the West Virginia State Bar for their costs expended in this matter.
Public reprimand administered.