399 S.E.2d 36

**The COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR**

**v.**

**W. Bernard SMITH, a Member of the West Virginia State Bar.**

**No. 19683.**

Supreme Court of Appeals of West Virginia.

Oct. 18, 1990.

Rehearing Denied Nov. 28, 1990.

---

Cynthia Santoro Gustke, Sherri D. Goodman, W.Va. State Bar, Charleston, for Committee on Legal Ethics of W.Va. State Bar.

W. Bernard Smith, Logan, for W. Bernard Smith.

PER CURIAM:

This is a disciplinary proceeding instituted by the Committee on Legal Ethics of the West Virginia State Bar against W. Bernard Smith, a member of the Bar.[1] The Committee recommended that this Court suspend Mr. Smith's license to practice law for one year because of his threats to deny benefits under a will to any beneficiary who challenged his stewardship of the estate by filing a complaint with the Committee. Because the charge was proven by clear and convincing evidence, we conclude that a one-year suspension of Mr. Smith's license is the appropriate penalty.

The complaint against Mr. Smith originally concerned Mr. Smith's administration of the estate of Reece S. Browning. All the heirs to the decedent's estate who were related to the decedent and the brother of the decedent, a non-heir, filed ethics complaints. The complaints alleged that Mr. Smith neglected and delayed administering the estate and failed to communicate with the heirs. Although the heirs requested their complaints be dismissed, the Investigative Panel of the Committee found that

---

1. For other disciplinary proceedings that were adjudicated by this Court involving Mr. Smith, see, *Committee on Legal Ethics v. W. Bernard Smith*, 156 W.Va. 471, 194 S.E.2d 665 (1973) (hereinafter *Smith I*); *In re Smith*, 158 W.Va. 13, 206 S.E.2d 920 (1974) (hereinafter *Smith II*); *In re Smith*, 166 W.Va. 22, 270 S.E.2d 768 (1980), *withdrawn*, Nov. 25, 1980 (hereinafter *Smith III*).

probable cause existed to hold a hearing. Charges against Mr. Smith were that he violated the *Code of Professional Responsibility* Disciplinary Rule 6–101(A)(3) by his failure to complete the administration of the estate and Disciplinary Rule 1–102(A) by his threats to deny estate funds to heirs who filed ethics complaints.[2] DR 6–101(A) states: "A lawyer shall not: ... 3) Neglect a legal matter entrusted to him." DR 1–102(A) states: "A lawyer shall not: ... (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

Hearings upon the charges were conducted by the Committee on Legal Ethics.[3] Thereafter, the Committee recommended that this Court suspend Mr. Smith's license to practice law for one year because of his attempts to interfere with the process of the filing of the ethics complaints by threatening the heirs who filed ethics complaints with the loss of benefits under the will of Reece S. Browning. On the charge of neglect in the estate administration, the Committee found that although Mr. Smith's "administration of the estate is not a paragon of competence, it does not rise to the level of a violation...."

I

On November 17, 1982, Mr. Browning executed a will prepared by Mr. Smith. The will named Mr. Smith as executor and provided that the estate be converted into cash at the sole discretion of the executor and divided among five heirs. The heirs included: Aldine Carlisle (sister of the decedent), Jeanne Johnston (niece of the decedent), Becky Browning Keyes (niece of the decedent), James White, Jr. (friend of the decedent), and Judy Barker (friend and employee of the decedent). The will also contained the following provision:

That should any beneficiary hereunder entertain such litigation against the Administrator (Mr. Smith), which should not prevail, the said beneficiary or persons claiming under such beneficiary shall be excluded from any of the benefits passing under this Last Will and Testament.

After Mr. Browning's death on February 28, 1983, Mr. Smith probated the will on March 8, 1983 and since then, has been attempting to complete the administration of the estate.[4] In October 1983, Mr. Smith made a $5,000 advance to each of the heirs and Ms. Barker received an additional advance of $2,000 in 1983 or 1984 because she was "in a bind." In 1984–5, several complaints were filed with the Ethics Committee alleging that Mr. Smith was dilatory in administering the estate and failed to communicate with certain heirs. In addition to the uneven distribution of assets, the other major complaint was Mr. Smith's administration of the estate concerned his failure to collect the value of two Associated Grocers' membership certificates.[5]

The appraisement of the estate, filed in December 1984, listed as potential assets two Associated Grocers' membership certificates with face amounts of $37,000 and $3,000. Associated Grocers did not file a claim against the estate. In the Summer of 1984, Mr. Smith had an informal meeting with a representative of Associated Grocers, which disclosed a possible claim against the estate and failed to determine the value of the memberships. After that meeting, Mr. Smith did not take any formal action to determine the value of the mem-

2. The *Code of Professional Responsibility*, which was in effect when this action arose, was superseded and replaced by the *Rules of Professional Conduct* on January 1, 1989.

3. Although the original complaints were filed in November and December 1984 and February 1985, the matter was not submitted for a decision until November 1989. Unfortunately during this disciplinary process, Mr. Smith developed a serious medical problem that caused some of the delay. Because of the inordinate delay in this case, the Committee On Legal Ethics of the West Virginia State Bar is preparing to recommend protocols to facilitate and expedite the resolution of complaints.

4. According to the record and representations made during oral argument on September 11, 1990, there has been no final distribution of the estate.

5. Ethics complaints were filed by the following heirs who were all relatives of the decedent: Ms. Carlisle, Ms. Johnston and Ms. Browning Keyes. Another ethics complaint was filed by Donald Rex Browning, the brother of the decedent, who was not an heir.

berships. Mr. Smith did not file suit or hire an attorney on behalf of the estate to file suit against Associated Grocers. The record indicates that if the estate files suit against Associated Grocers, Associated Grocers might, through a counterclaim, recover a claim against the estate, which is otherwise barred.

After the ethics complaints were filed, Mr. Smith threatened to retaliate against the heir/complainants by invoking the will's *"in terrorem"* clause to disinherit unsuccessful litigants. *See infra* p. 8. In a letter dated March 22, 1985 to Paul Farrell, attorney for some of the heirs, Mr. Smith quoted the will's *"in terrorem"* clause and then wrote that a legal ethics "final public hearing ... would appear to be litigation within the meaning of the will. Should your clients ... fail to prevail in their proceeding I would, of necessity, be forced to have a determination made as to whether they have forfeited any right of inheritance."

In an attempt to have the ethics complaint dismissed, Mr. Smith entered into an agreement with the heir/complainants. According to the agreement, once the ethics complaint was dismissed, Mr. Smith would undertake, without cost to the estate, a suit against Associated Grocers and settle the estate within 90 days. Mr. Smith also sent Ms. Keyes and Ms. Johnston $1,000 each for "expenses," and made a personal loan of $5,000 to Ms. Johnston. Ms. Carlisle testified that in 1986, she received $7,500 from Mr. Smith over the original advance.[6] Mr. Smith then drafted letters that the heir/complainants sent to the Ethics Committee asking for a dismissal of the complaints.

After the Investigative Panel of the Committee on Legal Ethics decided to proceed regardless of the requests to withdraw the complaints, Mr. Smith asked Ms. Johnston if she considered the acceptance of the "expense reimbursement" to be "taking money under false pretenses...." Mr. Smith requested that Ms. Keyes sign a

letter misrepresenting the facts surrounding her complaint. Mr. Smith said he "would like to own a house in Georgia" apparently referring to a potential lawsuit against Ms. Keyes who lives in Georgia. Mr. Smith prepared and sent a letter signed by Ms. Johnston directing her attorney not to testify at the disciplinary proceeding. Mr. Smith filed a lawsuit against Donald Browning, the non-heir brother of the decedent and a complainant, seeking damages for statements made by Mr. Browning to a reporter of the *Charleston Gazette* regarding the estate.

The Committee on Legal Ethics conducted several hearings that focused on two major issues: (1) Mr. Smith's attempts to collect the Associated Grocers' membership certificates, and (2) Mr. Smith's threats to deny benefits under the will to beneficiaries who filed ethics complaints against Mr. Smith. On the claim against Associated Grocers, the Committee found that although no action had been filed to determine the value of the memberships, this failure did not constitute such neglect as to violate DR 6–101(A). On the second charge—the threat to deny of benefits—the Committee found Mr. Smith's conduct to be repugnant to the purpose and philosophy of the *Code of Professional Responsibility* and recommended a one-year suspension of Mr. Smith's license to practice law.

## II

"The Disciplinary Rules of the Code of Professional Responsibility state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." Syllabus Point 3, *Committee on Legal Ethics v. Tatterson*, 173 W.Va. 613, 319 S.E.2d 381 (1984). The Committee has the burden of proving its charges against a lawyer by full, preponderating and clear evidence. We stated in Syllabus Point 1, *Committee on Legal Ethics v. Lewis*, 156 W.Va. 809, 197 S.E.2d 312 (1973):

---

6. Mrs. Carlisle was uncertain if the checks were written on the estate or Mr. Smith's account but

"did not see Browning Estate on that check."

In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar for the purpose of having suspended the license of an attorney to practice law for a designated period of time, the burden is on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee.

*See Committee on Legal Ethics v. Thompson,* 177 W.Va. 752, 356 S.E.2d 623 (1987); *Committee on Legal Ethics v. Daniel,* 160 W.Va. 388, 235 S.E.2d 369 (1977); *Committee on Legal Ethics v. Pence,* — W.Va. —, 216 S.E.2d 236 (1975); *Committee on Legal Ethics v. Pietranton,* 143 W.Va. 11, 99 S.E.2d 15 (1957).

■ We agree with the Committee that Mr. Smith's failure to pursue the claim against Associated Grocers is not a violation of DR 6–101(A). Although Mr. Smith has been dilatory in pursuing the claim for the estate, given the complications, he has not fallen below the minimum level of conduct proscribed by the *Code of Professional Responsibility.* The record indicates that Mr. Smith's informal attempt to collect the assets failed and that litigation to collect the assets might result in a counterclaim against the estate. In addition Mr. Smith, who has been seriously ill, has informally approached at least two lawyers concerning possible litigation. Although the delay in settling the estate does not constitute neglect at this time, we urge that the estate be settled without delay.[7]

■ From our review of the record and the numerous exhibits, we find that the Committee met its burden with regard to the charge that Mr. Smith threatened to deny benefits under the will because of the filing of legal ethics complaints.[8] The Committee found that Mr. Smith's attempt to frustrate the "disciplinary process is considered to be aggravating enough to warrant the recommended discipline." The evidence that Mr. Smith threatened to deny benefits to heirs who pursued ethics complaints against him is clear and conclusive.

■ Mr. Smith raises several procedural arguments in his defense, the most important of which is that the Committee's consideration of the alleged retaliatory threats made by Mr. Smith to the heir/complainants violated a due process requirement of notice and an opportunity to defend.

■ In this case the Statement of Charges reflects not only the complainants' concerns about the administration of the estate but also the threats Mr. Smith used to dissuade the heir/complainants. Mr. Smith had notice of the charge of neglect that was before the Investigative Panel and by his actions sought to frustrate the legal ethics complaint process. The investigation of a legal ethics complaint is not under the direction and control of the original complainant. Rather the Investigative Panel, with its goal of protecting the public, must consider the issues raised by the complainant and any attendant issues. *See In re Daniel,* 153 W.Va. 839, 173 S.E.2d 153 (1970); Syllabus Point 3, *Daily Gazette Co., Inc. v. Committee on Legal Ethics,* 174 W.Va. 359, 326 S.E.2d 705 (1984). The decision by the Investigative Panel to issue formal charges, after the requests to withdraw the complaint, on the neglect issue and the disruption of the investigatory process is not an abuse of discretion and does not show disparate treatment of Mr.

---

7. We note with concern that there has been an uneven distribution of estate assets. Assuming that the $1,000 expense reimbursements and the additional money to Ms. Carlisle and Ms. Johnson came from Mr. Smith's personal funds, the record indicates that Ms. Barker received an advancement from the estate of $2,000 in 1983–84 over the advancements received by the other heirs.

8. Mr. Smith also contends that the delay prior to the presentation to the Investigative Panel constitutes laches. After the complaints were filed, Mr. Smith was given an opportunity to settle the estate. However, the estate was not settled and Mr. Smith used the delay to attempt to have the complainant/heirs dismiss their complaints. Mr. Smith fails to show that the delay was prejudicial or placed him at a disadvantage. *See* Syllabus Point 2, *Committee on Legal Ethics v. Pence, supra.*

Smith.[9] Mr. Smith's argument would mean that the Committee would never be able to consider an attempt to thwart the process because those concerns would not be initially raised. The Statement of Charges gave notice to Mr. Smith of both the charges and the record indicates that he vigorously defended himself against both the charge of neglect and the charge of using his position as administrator to interfere with the legal ethics complaint process. We find that Mr. Smith had adequate notice of the charges against him and was given the opportunity to defend himself against the charges.

From our independent review of the record and exhibits, we find the Committee has met its burden of proof for the charge that Mr. Smith engaged in a pattern of conduct what was designed to threaten those heirs who filed complaints with the loss of benefits under the will. We also take judicial notice of Mr. Smith's prior discipline. In 1973, Mr. Smith was publicly reprimanded for procrastination and delay in handling a matter entrusted to him. *Smith I, supra* 156 W.Va. at 478, 194 S.E.2d at 669. Mr. Smith's illness and other personal problems were considered as a mitigating factor. *Id.* In 1974, we annulled Mr. Smith's license to practice law because of his federal conviction of conspiracy to cast fictitious votes for federal, state and local candidates in a primary election. *Smith II, supra.* In 1980 by a split decision, we reinstated Mr. Smith to the West Virginia State Bar. *Smith III, supra.*

 We note Mr. Smith's prior discipline because such discipline "is a very significant factor in determining an appropriate disciplinary sanction against the same attorney in a pending disciplinary proceeding. (Citations omitted)." *Committee on Legal Ethics v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107, 115 (1986). Al-

though the Committee knew of Mr. Smith's prior discipline and did not consider the prior discipline as an aggravating factor, the reason for our consideration was stated in Syllabus Point 5, *Tatterson, Id.,* which stated:

> Prior discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust.

In Syllabus Point 3, in part, of *In re Brown, supra,* we said:

> Absent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the State Bar Legal Ethics Committee ... are to be given substantial consideration.

*See* Syllabus Point 2, *Committee on Legal Ethics v. Harman,* 179 W.Va. 298, 367 S.E.2d 767 (1988).

After careful consideration of the record, the serious nature of Mr. Smith's conduct and Mr. Smith's prior discipline, we concur with the recommendation of the Committee that a one-year suspension of Mr. Smith's license is the appropriate penalty.

For the above reasons, the license to practice law of W. Bernard Smith is suspended for a period of one year.

License suspended.

NEELY, Chief Justice, dissenting:

The majority opinion is correct as far as it goes; however, it does not describe in detail the enormously combative nature of the heirs and non-heirs of this estate. The decedent, at the time of his death, was in the process of settling his mother's estate. Prior to her death, Mrs. Browning had conveyed most of her property to the decedent and at her death the decedent's siblings,

---

9. Mr. Smith alleges that Committee Chairman Arthur M. Recht should not have served as the Chair of the Hearing Panel because he signed the Statement of Charges against Mr. Smith. Chairman Recht's signature on the Statement of Charges was done in his administrative capacity and he was not privy to the deliberations of the Hearing Panel.

Mr. Smith argues that bar counsel's presentation of an evidentiary notebook to the Chairman in advance of the hearing is another indication that the Investigative and Hearing Panels were not separate and distinct. Mr. Smith also received a copy of the evidentiary notebook in advance and Chairman Recht noted during the formal hearings that he did not consider the evidence contained therein prior to the formal hearing.

especially his brother, expressed their dissatisfaction. In the full expectation of a similar gnashing of teeth and tearing of hair during the administration of his estate, especially because the decedent's brother was not an heir, the decedent drafted a will with the *"in terrorem"* provision and appointed his lawyer, Mr. Smith, to serve as administrator.

Although I agree with the majority that what Mr. Smith did was wrong, I believe that the penalty is too high in light of Mr. Smith's extraordinarily bad health in the last four years (one of his legs was amputated) and the difficulties of eliciting cooperation from these particularly quarrelsome complainants.

Accordingly, I believe the penalty too harsh.