541 A.2d 966

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Herbert Stanley EZRIN.**

**Misc. Docket (Subtitle BV) No. 38, Sept. Term, 1986.**

Court of Appeals of Maryland.

June 1, 1988.

Melvin Hirshman, Bar Counsel, Attorney Grievance Com'n of Maryland, for petitioner.

Durke G. Thompson, Bethesda, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

**604**

MURPHY, Chief Judge.

Herbert Ezrin, a member of the Maryland Bar since 1966, was charged in the Circuit Court for Montgomery County with two counts of conversion of partnership funds, and one count of misappropriation of entrusted funds, in violation, respectively, of Maryland Code (1987 Repl.Vol.), Article 27, § 173 and Code (1987 Repl.Vol.), Article 10, § 44(a). He pleaded guilty to the charges and was sentenced to six years' imprisonment with all but ninety days suspended.

The record discloses that over a three-year period Ezrin misappropriated and converted $200,000 for his own personal use from funds belonging to the law partnership with which he practiced law. Full restitution of the amount of the theft was made by Ezrin following discovery of the misappropriation.

Following his criminal convictions, the Attorney Grievance Commission, acting through Bar Counsel, filed a Petition for Disciplinary Action against Ezrin, alleging violations of the disciplinary rules of the Code of Professional Responsibility. We referred the matter pursuant to Maryland Rule BV9 b to Judge Calvin R. Sanders of the Circuit Court for Montgomery County to make findings of fact and conclusions of law.

After conducting an evidentiary hearing, Judge Sanders found that neither drugs, alcohol, nor gambling was implicated in Ezrin's misconduct, and that no "financial pressures ... contributed to his actions." Judge Sanders further found that subsequent to his misconduct, Ezrin came under the care and treatment of two psychiatrists (Drs. Crowley and Kurtz) who agreed that "he was not at the time of the misappropriations, nor is he now, psychotic, but that his actions may be attributable to a mental disorder characterized as a mixed personality disorder." Judge Sanders also found from the evidence, particularly from Dr. McDaniel, a psychiatrist who examined Ezrin at Bar Counsel's request, that Ezrin's misappropriation was only of partnership funds and was made "with full knowledge that he was committing illegal acts"; that he was not acting

under "any compulsion to steal"; that he possessed the "full ability to cease such acts at any time"; that his actions "were taken and rationalized by his belief that his partners were taking undue advantage of him, and that the funds so misappropriated were due him because of his unrequited contributions to partnership activities." Additionally, Judge Sanders found that Ezrin requires continuing psychiatric treatment and that the prospects for resolving his personality disorder are encouraging. By reason of Ezrin's misconduct, Judge Sanders concluded that there had been violations of DR 1–102(A)(3), (4), (5) and (6) of the Code of Professional Responsibility, *i.e.*, that Ezrin engaged in illegal conduct involving moral turpitude, dishonesty, fraud, deceit, or misrepresentation; and conduct prejudicial to the administration of justice, which adversely reflected on Ezrin's fitness to practice law.

Ezrin took exception to Judge Sanders' factual determination that he had the ability to cease his illegal actions at any time. In his exceptions, and during oral argument before us, Ezrin pointed out that Dr. Crowley testified that Ezrin was incapable, on his own, of stopping his acts of misappropriation; and that Dr. Kurtz testified that Ezrin "rationalized his actions and was acting out his depression neurosis and was helpless at this time because he was without a full complement of psychological abilities."

Ezrin acknowledges that Dr. McDaniel testified that while Ezrin was the subject of very powerful and disturbing emotions, which obscured his judgment, he nevertheless could have ceased his criminal acts. Dr. McDaniel's testimony, Ezrin contends, was inconsistent with her own diagnosis that he was suffering from a mental disorder at the time of the misappropriations which was "brought about by deepseated personality deficits exacerbated by a pressure and stress ridden environment." Ezrin claims that Judge Sanders' factual finding was contrary to the weight of the evidence and was, therefore, clearly erroneous.

By way of a disciplinary sanction for his admitted misconduct, Ezrin asks that we take into account that his criminal

acts were "not fully volitional, but were the product of a long history of negative contact from others, emotional illness, and brought about [by] the interaction of the Respondent with family and associates." Contending that his misappropriation of the partnership funds was caused by his disabling emotional state, and did not involve client funds, Ezrin suggests that "the administration of justice did not suffer except in the broadest sense"; that he has shown by the psychiatrists' testimony that his mental condition was "not of his own making"; that he acted out of anger rather than from greed or avarice in a self-destructive effort to strike back at his uncaring law partners. Ezrin expresses deep remorse for his misconduct and urges that disbarment is not appropriate in the circumstances. He points to a number of factors which he says mitigates his misconduct, particularly that his mental state was a substantial causative factor in his misbehavior. He suggests that he is presently fit for the practice of law, is not a threat to clients or the public in general, and is a positive force in the community. He asks to be restored to the active practice of law forthwith under such conditions as may be imposed by this Court, including counseling by the Director of the Lawyer Counseling Service of the Maryland State Bar Association.

Bar Counsel recommends disbarment. He maintains that Judge Sanders was correct in concluding from the evidence that Ezrin's misconduct was not caused by his mental condition. He further argues that no compelling extenuating circumstances exist to warrant a sanction less than disbarment.

We have carefully reviewed the testimony before Judge Sanders. Doctors Crowley and Kurtz, testifying on behalf of Ezrin, believed that Ezrin's psychiatric problems were rooted in his childhood. The thrust of their testimony was that because of Ezrin's mental and emotional difficulties, he was unable to cope with anger and frustration in his relationships with others; and that his resentment of his partners' actions manifested itself, as a substitute for communicating his anger, in the theft of the partnership's funds. As

to whether Ezrin knew that he was doing wrong when he misappropriated the funds, Crowley said Ezrin "didn't give it a thought, or . . . he thought he was getting what was his due." As to whether Ezrin could have stopped the thefts at any time, Crowley said that he doubted that he could because "he was caught in the vortex of his depression, and the emotional problems that he had at the time." Dr. Kurtz's testimony was similar to that of Dr. Crowley. He said at one point that Ezrin had "some vague understanding of wrongness" when he stole the money but that it would have been "enormously hard" for him to have stopped his criminal acts.

Dr. McDaniel, Bar Counsel's witness, recognized that Ezrin had a mixed personality disorder stemming from childhood and that the disorder continued during the time of the misappropriations. She examined Ezrin on two occasions and also met with Ezrin and his wife another time. Dr. McDaniel said that Ezrin was incapable of expressing his anger and avoided confrontation with other persons; that he invited people to take advantage of him and felt self-righteous once that had happened; that Ezrin took on considerable responsibility and invited his partners to depend upon him; but that he was nevertheless angered by his partners' reliance upon him and felt victimized. Dr. McDaniel was firm in her testimony that Ezrin was not under an uncontrollable compulsion to steal but knew that he was stealing from his partners and could have voluntarily stopped. She said that "the push to get what he felt was due him was a stronger push than the push to stay within the boundaries of appropriate behavior." She said that Ezrin's misconduct was based on "revenge, anger" and that self-destruction was not a motivating factor in the thefts.

In his testimony before Judge Sanders, Ezrin acknowledged that his misappropriation was a reaction toward his partners and to the frustrations which he had. "It was a way for me to seek a degree of revenge, or just due, or take my anger out on them without being able to confront them in any way." Ezrin testified to his belief that he was not

doing anything wrong at the time he misappropriated the funds.

Under Maryland Rule BV10 e 1, the final judgment by the Circuit Court for Montgomery County of Ezrin's guilt in the criminal case is "conclusive proof of the guilt of the attorney of that crime." Therefore, the basic question before us is whether Ezrin's mental condition was a substantial cause of the misappropriation—whether his dishonesty was the result of his mental illness. Of course, under Maryland Rule BV10 d, the factual findings of the hearing judge must be supported by clear and convincing evidence. In this regard, we note that Judge Sanders' findings have the force and effect similar to those in a Master's report in equity; they are prima facie correct and will not be disturbed unless clearly erroneous. *Attorney Griev. Comm'n v. Willcher,* 287 Md. 74, 77, 411 A.2d 83 (1980); *Bar Ass'n v. Marshall,* 269 Md. 510, 515–16, 307 A.2d 677 (1973).

*Attorney Griev. Comm'n v. Nothstein,* 300 Md. 667, 480 A.2d 807 (1984) involved an attorney who obtained in excess of $40,000 from his law firm by submitting false expense claims. In that case, as here, the question was whether the Respondent's mental condition was the cause of the misconduct and whether the attorney was able to control his actions. On this point, there was conflicting psychiatric testimony. The hearing judge believed the testimony of one psychiatrist who found that there was no causative relationship between the attorney's mental condition and his misconduct. We recognized that a trier of fact "may elect to pick and choose which [expert] evidence to rely upon." 300 Md. at 684, 480 A.2d 807. As in *Nothstein,* we cannot say that Judge Sanders, in choosing to credit the testimony of Dr. McDaniel, was clearly erroneous in concluding that Ezrin's mental condition was not responsible for his misconduct and that he was not unable to control his criminal actions. Accordingly, we shall overrule Ezrin's exceptions to Judge Sanders' factual determination.

Misappropriation of funds by an attorney involves moral turpitude; it is an act infected with deceit and dishon-

esty and will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction. *Nothstein, supra; Attorney Griev. Comm'n v. Harper,* 300 Md. 193, 196–97, 477 A.2d 756 (1984); *Attorney Griev. Comm'n v. Pattison,* 292 Md. 599, 609, 441 A.2d 328 (1982); *Attorney Griev. Comm'n v. Burka,* 292 Md. 221, 225, 438 A.2d 514 (1981). We have carefully reviewed the reasons advanced by Ezrin in mitigation of his misconduct, *i.e.,* his general good character, his excellent reputation as a lawyer, lack of prior misconduct, his restitution of the stolen funds, and his cooperation with the authorities. None of these constitutes compelling extenuating circumstances, *see Attorney Grievance Com'n v. Molovinsky,* 300 Md. 291, 297, 477 A.3d 1181 (1984), that would warrant a sanction other than disbarment. Accordingly, we shall order that Herbert Stanley Ezrin be disbarred and that his name be stricken from the rolls of those authorized to practice law in this State.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST HERBERT STANLEY EZRIN.