413 S.E.2d 169

The COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR, Complainant,

v.

Richard HESS, a Member of the West Virginia State Bar, Respondent.

No. 20225.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1991.

Decided Dec. 19, 1991.

---

Sherri D. Goodman, West Virginia State
Bar, Charleston, for complainant.

Allan H. Masinter, Charleston, for respondent.

MILLER, Chief Justice:

In this disciplinary proceeding, the Committee on Legal Ethics of the West Virginia State Bar (Committee) asks us to suspend Richard Hess's license to practice law for a period of two years and charge him costs of $694.41 for the expense of conducting the disciplinary proceedings. For the reasons stated below, we accept this recommendation of the Committee.

In 1985, Mr. Hess was a partner in the law firm of Lewis, Ciccarello & Friedberg in Charleston, West Virginia. In August of that year, unknown to his firm, he opened a settlement account for his real estate transactions which was separate from the client trust account of the firm. This account was opened in the name of "Richard H. Hess, Settlement Agent." Mr. Hess had complete control of this account (hereinafter "the Hess Account"), making all deposits and disbursements as well as keeping the books for the account. In July of 1986, Mr. Hess converted this account to an interest-bearing account without notifying or getting permission from the firm.

In June, 1989, the firm decided to audit its client trust accounts, including the Hess Account. Mr. Hess objected to the audit of his account, but ultimately turned over the books and allowed the audit to proceed. The auditor determined that the Hess Account had earned $10,304.75 in interest, of which Mr. Hess had withdrawn $6,189.25 and deposited it into his personal account. Mr. Hess had also written checks to himself on the account in the amount of $16,759.97. These funds, which had been designated as legal fees, were deposited in Mr. Hess's personal account instead of the firm's business account. As a result of these revelations, Mr. Hess resigned from the law firm in September, 1989.

The Committee contends that Mr. Hess's conduct constitutes a violation of DR 1-102(A)(4) and (6) of the Code of Professional Responsibility, which prohibit conduct involving dishonesty or fraud and conduct adverse to the fitness to practice law. Its parallel is now found in Rule 8.4 of the Rules of Professional Conduct.[1]

Implicit in our consideration of disciplinary actions recommended by the Committee is our traditional rule regarding the Committee's burden of proof, which is expressed in Syllabus Point 1 of *Committee on Legal Ethics v. Smith*, 184 W.Va. 6, 399 S.E.2d 36 (1990):

" 'In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar for the purpose of having suspended the license of an attorney to practice law for a designated period of time, the burden is on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee.' Syllabus Point 1, *Committee on Legal Ethics v. Lewis*, 156 W.Va. 809, 197 S.E.2d 312 (1973)."

*See also* Syllabus Point 1, *Committee on Legal Ethics v. Higinbotham*, 176 W.Va. 186, 342 S.E.2d 152 (1986); Syllabus Point 1, *Committee on Legal Ethics v. Tatterson*, 173 W.Va. 613, 319 S.E.2d 381 (1984).

We find that the Committee has met its burden and that Mr. Hess's actions clearly constituted conduct involving dishonesty, fraud, deceit, and misrepresentation. He deceived and misrepresented to

---

1. During most of the time that Mr. Hess was converting the partnership funds, the Code of Professional Responsibility was applicable. DR 1-102(A)(4) and (6) provided:

   **DR 1-102 Misconduct.**—(A) A lawyer shall not:

   \* \* \* \* \* \*

   "(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

   \* \* \* \* \* \*

   "(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

The Rules of Professional Conduct became effective on January 1, 1989. Rule 8.4 provides, in pertinent part:

   **RULE 8.4 Misconduct**

   "It is professional misconduct for a lawyer to:

   \* \* \* \* \* \*

   "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

   "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

his partners, either directly or by his failure to disclose, the nature of the Hess Account. He also took money which clearly was not his and converted it to his own use.

Mr. Hess attempts to characterize his conversion of the funds as an internal business disagreement. There is nothing in the record to reflect this. It was not until the audit was made that his partners became aware of his conduct. This is not a situation where there is a bona fide dispute as to whether, under the firm's past practice, the funds converted were authorized.

Mr. Hess also maintains that his capital account in the firm was such that if the funds converted were credited to it, he would have had a positive balance compared to some of the partners who had a negative balance. The issue here is not the partnership capital account, but is the fact that monies were taken without the knowledge or authorization of the partnership.

█ The fact that Mr. Hess believed that he had been unfairly treated by his partners in the allocation of the firm's profits neither justifies nor mitigates his action. To hold otherwise would allow each person in a partnership to set his or her salary without regard to the partnership arrangement. Moreover, it would ignore the general rule recognizing that in a partnership, the partners occupy a fiduciary relationship with each other which requires them to deal with each other in the utmost good faith. *See* 59A Am.Jur.2d *Partnership* § 420 (1987). We recognized this rule in Syllabus Point 1, in part, of *Zogg v. Hedges*, 126 W.Va. 523, 29 S.E.2d 871 (1944):

"The utmost good faith and fair dealing must be exercised toward each other by ... partners, not only after the partnership has been formed, but also during negotiations leading thereto."

*See also Barker v. Smith & Barker Oil & Gas Co.*, 170 W.Va. 502, 294 S.E.2d 919 (1982).

█ Throughout the respondent's argument is the implication that because no clients have suffered any particular loss, there is no disciplinary violation. Courts have held that standards of professional conduct are applicable to an attorney's relationship with his or her firm. If a lawyer converts firm monies to his or her own use without authorization, the attorney is subject to a disciplinary charge. Such conduct obviously reflects a dishonest and deceitful nature which violates the general precept that an attorney should avoid dishonesty or deceitful conduct.

In *Kaplan v. State Bar of California*, 52 Cal.3d 1067, 278 Cal.Rptr. 95, 804 P.2d 720 (1991), the California Supreme Court disbarred an attorney who had converted $29,000 of firm monies to his personal account. The court found his actions violated the canon against dishonesty and concealments because they were "part of a purposeful design to defraud his partners." 52 Cal.3d at 1071, 278 Cal.Rptr. at 98, 804 P.2d at 98. As in the present case, the attorney in *Kaplan* had reimbursed his partners and, at their urging, had reported his conduct to the State Bar.

In *Attorney Grievance Commission v. Ezrin*, 312 Md. 603, 541 A.2d 966 (1988), the attorney had converted $200,000 of his firm's money to his personal use. He was charged under canons similar to ours for conduct involving dishonesty, fraud, deceit, or misrepresentation in the administration of justice. The Supreme Court of Maryland stated: "Misappropriation of funds by an attorney involves moral turpitude; it is an act infected with deceit and dishonesty and will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." 312 Md. at 608–09, 541 A.2d at 969. (Citations omitted). The court refused to find that the attorney's "general good character, his excellent reputation as a lawyer, lack of prior misconduct, his restitution of the stolen funds, and his cooperation with the authorities ... constitute[] compelling extenuating circumstances[.]" 312 Md. at 609, 541 A.2d at 969. (Citation omitted). Other courts have come to the conclusion, without any elaborate discussion, that the conversion of partnership funds is a disciplinary violation. *See People v. Navran*, 174 Colo. 222, 483 P.2d 228 (1971); *Committee on Professional Ethics & Conduct v. Piazza*,

405 N.W.2d 820 (Iowa 1987); *In re Petition for Disciplinary Action Against Ladd,* 463 N.W.2d 281 (Minn.1990).

 Although not couched directly as a mitigating circumstance, we are reminded that Mr. Hess has repaid the funds to his firm. We have indicated in several cases that the repayment of funds wrongfully held by an attorney does not negate a violation of the disciplinary rule. *See, e.g., Committee on Legal Ethics v. Woodyard,* 174 W.Va. 40, 321 S.E.2d 690 (1984); *Committee on Legal Ethics v. Pence,* 216 S.E.2d 236 (W.Va.1975). We did recognize in *Committee on Legal Ethics v. White,* 176 W.Va. 753, 349 S.E.2d 919 (1986), that restitution of funds wrongfully taken by an attorney may in some instances mitigate the disciplinary punishment imposed.[2] However, we went on to state in *White* that "[a]ny rule regarding mitigation of the disciplinary punishment because of restitution must be governed by the facts of the particular case." 176 W.Va. at 759, 349 S.E.2d at 926. In *White,* the attorney had concealed his misappropriation of funds from his cotrustee for two and one-half years. After the cotrustee hired an attorney, Mr. White then repaid the funds. We declined to consider the repayment as a mitigating factor.

In the present case, the concealment lasted approximately four years. When the audit of the Hess Account was first proposed, Mr. Hess initially resisted, but ultimately consented. It was not until sometime after the audit that Mr. Hess reimbursed the firm. Under these circumstances, we decline to consider the repayment of the funds as a mitigating factor.

Mr. Hess asserts that he ceased practicing law in 1989. Under these circumstances, and in view of the severity of the offense, we believe that the recommended two-year suspension should begin upon the date of the mandate of this opinion. This will be equivalent to a four-year suspen-

sion. The costs of the Committee are to be paid by the respondent.

Two-year suspension and costs.

---

**2.** In *White,* we referred to our mitigation discussion in *Committee on Legal Ethics v. Tatterson,* 173 W.Va. 613, 619–20, 319 S.E.2d 381, 387–88 (1984).