IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 18-0582

_____

FILED
**April 3, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: PETITION FOR REINSTATEMENT OF C. CRADY SWISHER

_____

Lawyer Disciplinary Proceeding

REINSTATEMENT DENIED

_____

Submitted: February 19, 2020
Filed: April 3, 2020

Mark W. Kelley, Esq.
RAY, WINTON & KELLEY, PLLC
Charleston, West Virginia
Counsel for Petitioner

Rachael L. Fletcher Cipoletti, Esq.
Jessica H. Donahue Rhodes, Esq.
Office of Disciplinary Counsel
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

1.	"This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."  Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

2.	"A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to the questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle,* 192 W. Va. 286, 452 S.E.2d 377 (1994).

3.	"The general rule for reinstatement is that a disbarred attorney in order to regain admission to the practice of law bears the burden of showing that he presently possesses the integrity, moral character and legal competence to resume the practice of law. To overcome the adverse effect of the previous disbarment he must demonstrate a record of rehabilitation. In addition, the court must conclude that such reinstatement will not have a justifiable and substantial adverse effect on the public confidence in the administration of justice and in this regard the seriousness of the conduct leading to disbarment is an

important consideration." Syllabus Point 1, *In re Brown*, 166 W. Va. 226, 273 S.E.2d 567 (1980).

4. "Rehabilitation is demonstrated by a course of conduct that enables the court to conclude there is little likelihood that after such rehabilitation is completed and the applicant is readmitted to the practice of law he will engage in unprofessional conduct." Syllabus Point 2, *In re Brown*, 166 W. Va. 226, 273 S.E.2d 567 (1980).

Armstead, Chief Justice:

C. Crady Swisher's license to practice law in West Virginia was suspended in 1998 for violating two rules of professional conduct. Specifically, Mr. Swisher was determined by this Court to have violated Rules of Professional Conduct 8.4(d) and 8.1. *See Lawyer Disciplinary Bd. v. Swisher*, 203 W. Va. 603, 509 S.E.2d 884 (1998). Before seeking reinstatement, this Court required the following conditions be met:

> 1) Mr. Swisher demonstrates to the satisfaction of the West Virginia ODC that he has satisfied in total the judgment and interest thereon entered against him in the United States District Court;
>
> 2) Mr. Swisher successfully completes the Multistate Professional Responsibility Examination; and
>
> 3) Mr. Swisher pays all costs incurred in the investigation and hearing of this matter.

*Id.*, 203 W. Va. 603, 606, 509 S.E.2d 884, 887. The parties agree that Mr. Swisher has met all of the specific conditions for reinstatement established in *Swisher*.

At the time Mr. Swisher was suspended by this Court, he was also admitted to practice before the Pennsylvania Bar. Four years after his suspension in West Virginia, Mr. Swisher was disbarred by consent in Pennsylvania. Following his disbarment, Mr. Swisher never informed the West Virginia Office of Disciplinary Counsel ("WVODC") of Pennsylvania's actions. *See W. Va. R. Disciplinary P.*, Rule 3.20(b). He has also failed to make restitution to the Pennsylvania Office of Disciplinary Counsel ("PODC") for the costs of those disciplinary proceedings, failed to reimburse the Pennsylvania Lawyers Fund

1

for Client Security for payments to clients affected by his actions, and failed to resolve a federal tax lien. Now, Mr. Swisher petitions this Court for reinstatement of his West Virginia law license.

In light of the nature of the underlying offense, his failure to inform the West Virginia Bar of Pennsylvania's actions, and the lack of effort to make restitution to those damaged by his actions in Pennsylvania, the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board and the WVODC recommend that we deny Mr. Swisher's petition for reinstatement. For the reasons stated below, we agree.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Court suspended C. Crady Swisher's law license in 1998 for violating the provisions of Rules 8.4(d)[1] and 8.1[2] of the Rules of Professional Conduct. The facts

---

[1] Rule 8.4(d) provides, "It is professional misconduct for a lawyer to: engage in conduct that is prejudicial to the administration of justice."

[2] Rule 8.1 states:

> An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> (a)    knowingly make a false statement of material fact; or
>
> (b)    fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the

(continued . . .)

leading to Mr. Swisher's suspension, and the requirements established by this Court for his reinstatement, are more fully discussed in *Lawyer Disciplinary Bd. v. Swisher*, 203 W. Va. 603, 509 S.E.2d 884 (1998). In that matter, Mr. Swisher reached a settlement prior to trial in a legal malpractice claim filed against him. *Id.*, 203 W. Va. 603, 604, 509 S.E.2d 884, 885. He failed to timely pay the full amount of the settlement, and his former client was forced to file a motion to enforce the settlement, which resulted in a judgment order against Mr. Swisher in the amount of $15,000.00, plus interest. *Id.* He then failed to respond to the ethics complaint filed against him. *Id.*, 203 W. Va. 603, 605, 509 S.E.2d 884, 886.

At the time Mr. Swisher's West Virginia law license was suspended, he was admitted in good standing before the Pennsylvania Bar.[3] However, that good standing was short-lived. On or about June 13, 2000, PODC filed a Petition for Discipline against Mr. Swisher relating to a complaint involving his client, Client E.C.,[4] and thereafter placed Mr. Swisher's Pennsylvania license on emergency temporary suspension on May 9, 2001. On

matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

[3] Pennsylvania declined to proceed on reciprocal charges stemming from West Virginia's suspension.

[4] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

August 30, 2001, PODC filed another Petition for Discipline against Mr. Swisher for violations relating to two additional clients, Client J.J.D. and Client H.S..

The facts of the individual client relationships giving rise to the Pennsylvania Petition for Discipline are as follows:

a. Client E.C.

Client E.C. had a medical malpractice matter and retained Mr. Swisher who agreed to represent her in April 1992, in exchange for a contingency fee. That arrangement was never placed in writing, and Mr. Swisher thereafter sought and obtained a retainer from Client E.C. in the amount of $1,000.00. In May 1993, Mr. Swisher brought lawsuits on behalf of Client E.C., with one of those lawsuits resulting in a judgment entered against Client E.C.. Mr. Swisher never informed his client of that judgment and did not communicate with her from January 1994 through August 1996.

After judgment was entered in the one matter, Mr. Swisher performed work on the remaining case he filed on behalf of Client E.C., but the Court granted a Motion for Judgment on the Pleadings against Client E.C. in that matter on August 6, 1996, thereby dismissing the remaining action. During that month, Mr. Swisher spoke with Client E.C. and told her he was not enthusiastic about the cases he had filed. Client E.C. insisted upon pursuing the matters. Mr. Swisher agreed to continue his representation, but he never informed Client E.C. that every matter he had brought on her behalf had been dismissed.

4

Mr. Swisher failed to contact Client E.C. for almost another year and a half, even though Client E.C. repeatedly attempted to reach him. Finally, in spring 1998, Client E.C. successfully connected with Mr. Swisher, but he failed to fully inform Client E.C. of the status of the matters. Thereafter, Client E.C. sought recourse from the Pennsylvania Lawyers Fund for Client Security, and she was able to recover the $1,000.00 retainer she had paid to Mr. Swisher. As a result of his actions, Mr. Swisher was charged on June 13, 2000, by the PODC with violations of Pennsylvania Rules of Professional Conduct, Rules 1.4(a), 1.4(b), 1.5(c), 1.15(b), and 1.16(d).

b. Client J.J.D.

In November 1995, Client J.J.D. was involved in a work-related motor vehicle accident, resulting in the amputation of his left leg. Client J.J.D. retained Mr. Swisher to represent him under a one-third contingency fee contract. A settlement of that matter was reached in June 1996 for $150,000.00. Mr. Swisher took his $50,000.00 fee and retained the remaining $100,000.00 in his client trust account pending a determination of any subrogation rights of the Pennsylvania State Workers' Insurance Fund. While the subrogation issue was pending, Mr. Swisher withdrew the $100,000.00 for his own use.

When the subrogation issue was resolved in September 1998, Mr. Swisher never informed Client J.J.D. that the case was resolved but instead told Client J.J.D. that the matter was still on appeal and that the funds were in an account drawing interest. When

5

Client J.J.D. learned in fall 2000 that no appeals were pending, he retained another attorney to recover the funds. As a result of his actions, Mr. Swisher was charged by the PODC on August 30, 2001, with violations of Pennsylvania Rules of Professional Conduct, Rules 1.15(a), 1.15(b), 8.4(b), and 8.4(c).

### c. Client H.S.

In July 1995, Client H.S. suffered injuries when he was knocked down. Thereafter, he entered into a one-third contingency fee arrangement for Mr. Swisher to represent him in pursuing certain legal remedies. Mr. Swisher filed a lawsuit on Client H.S.'s behalf in July 1997. In October 1999, Mr. Swisher reached a settlement of the lawsuit in the amount of $85,000.00. During that same month, Mr. Swisher was contacted by Client H.S.'s medical providers about payment of outstanding medical bills.

In November 1999, when Mr. Swisher disbursed his $28,333.33 fee to himself, the balance on his client trust account was $56,593.79, an amount that was $72.88 less than the amount he was entrusted to keep for Client H.S.. For the next year, Mr. Swisher did not pay any of Client H.S.'s outstanding medical bills or liens, and the amount in his client trust account dipped well below the amount he was required to hold in trust for Client H.S.. At times, there was a negative balance in the account. In December 2000, Mr. Swisher finally paid the outstanding balance on the medical bills, and provided Client H.S. the remaining balance due to him. As a result of his actions, Mr. Swisher was charged

6

by the PODC on August 30, 2001, with violations of Pennsylvania Rules of Professional Conduct, Rules 1.15(a), 1.15(b), 8.4(b), and 8.4(c).

Thereafter, on January 24, 2003, Mr. Swisher filed a petition for retroactive disbarment on consent, and the Pennsylvania Supreme Court entered an order accepting his petition, making Mr. Swisher's disbarment effective retroactively to June 8, 2001. Following his disbarment by the Pennsylvania Supreme Court, the United States District Court for the Western District of Pennsylvania also disbarred Mr. Swisher by consent in an order dated July 22, 2003.

As a result of the actions taken by the Pennsylvania Bar, Mr. Swisher owes $8,509.91 to the PODC for the costs of the proceeding against him and $127,004.44 (as of November 2018) to the Pennsylvania Lawyers Fund for Client Security for payments made to five different clients who were harmed by Mr. Swisher's actions. Additionally, Mr. Swisher owes the Internal Revenue Service approximately $3,800.00 from 2010.

In his petition for reinstatement, Mr. Swisher disputes the total amounts owed to the Pennsylvania authorities. He claims that the total amount owed to the PODC is less because there is case law that precludes PODC's recovery of expert fees. He also disagrees with the amount the Pennsylvania Lawyers Fund for Client Security claims is owed. Notably, however, Mr. Swisher has made no effort in Pennsylvania to either challenge the amounts owed, or to begin payment of such amounts. In fact, in his petition to this Court,

7

Mr. Swisher says that he will begin to make payments to Pennsylvania, "if made as a condition of reinstatement" to the West Virginia Bar.

Following these events, Mr. Swisher was unemployed until April 2005, when he began work as a part-time law clerk for a lawyer in Harrisburg, Pennsylvania. He continued working as a part-time law clerk for that lawyer until that lawyer retired from the active practice of law in 2018. Mr. Swisher has also performed part-time law clerk duties since September 2006 for another lawyer in Harrisburg, Pennsylvania, and continues to do so. Finally, Mr. Swisher worked as a Court Appointed Special Advocate for abused and neglected children in the Court of Common Pleas of Allegheny County, Pennsylvania, until he moved to a different county that did not have that program. Mr. Swisher has also regularly attended continuing legal education ("CLE") programs in West Virginia.

Mr. Swisher filed his petition for reinstatement with this Court on June 28, 2018, which was referred to the WVODC pursuant to Rule 3.32(a)[5] of the Rules of Lawyer Disciplinary Procedure. WVODC then filed its report with the HPS of the Lawyer Disciplinary Board on December 10, 2018. A hearing was held before the HPS on March 15, 2019, during which Mr. Swisher and numerous witnesses testified. The HPS concluded

---

[5] This rule provides, in pertinent part, "[a]t the time of filing such petition and questionnaire with the Clerk of the Supreme Court, the petitioner shall file a copy of each with the Office of Disciplinary Counsel, which shall investigate the same and determine whether a hearing is necessary." *W. Va. R. Disciplinary P.*, Rule 3.32(a).

that Mr. Swisher's reinstatement would have a "justifiable and substantial adverse effect of the public confidence in the administration of justice" and that he had not demonstrated that he had been fully rehabilitated. The WVODC consented to the HPS's recommendation. On November 22, 2019, Mr. Swisher filed his request for a hearing before this Court pursuant to Rule 3.33(c)[6] of the Rules of Lawyer Disciplinary Procedure.

## II. STANDARD OF REVIEW

"This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspension or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984). As the final arbiter, this Court exercises its own independent judgment when considering a petition for reinstatement:

> A *de novo* standard applies to a review of the adjudicatory record made before the [LDB] as to the questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [LDB's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [LDB's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

---

[6] Rule 3.33(c) states, in pertinent part, "[w]ithin ten days after the filing of the report of the Hearing Panel Subcommittee, either the petitioner or Disciplinary Counsel shall have the right to make written request of the Court for a hearing upon the matters arising on the petition." *W. Va. R. Disciplinary P.*, Rule 3.33(c).

Syllabus Point 3, *Comm. on Legal Ethics v. McCorkle,* 192 W. Va. 286, 452 S.E.2d 377 (1994).

### III. ANALYSIS

In *Swisher*, this Court set forth specific conditions, noted above, that all parties to this matter agree were fully met by Mr. Swisher. Thus, the issue here is not whether Mr. Swisher met those conditions, but rather, whether he has satisfied the following requirement:

> that he presently possesses the integrity, moral character and legal competence to resume the practice of law. To overcome the adverse effect of the previous disbarment he must demonstrate a record of rehabilitation. In addition, the court must conclude that such reinstatement will not have a justifiable and substantial adverse effect on the public confidence in the administration of justice and in this regard the seriousness of the conduct leading to disbarment is an important consideration.

Syllabus Point 1, in part, *In re Brown*, 166 W. Va. 226, 273 S.E.2d 567 (1980). We have held that:

> Rehabilitation is demonstrated by a course of conduct that enables the court to conclude there is little likelihood that after such rehabilitation is completed and the applicant is readmitted to the practice of law he will engage in unprofessional conduct.

*Id.*, Syllabus Point 2. To weigh whether a lawyer has been rehabilitated, we have previously used a five-prong test that considers:

> (1) the nature of the of the original offense for which the petitioner was disbarred; (2) the petitioner's character, maturity, and experience at the time of disbarment; (3) the

10

petitioner's occupations and conduct in the time since his disbarment; (4) the time elapsed since the disbarment; and (5) the petitioner's present competence in legal skills.

*In re Smith*, 214 W. Va. 83, 85, 585 S.E.2d 602, 604 (1980). We have also clearly stated that "the more serious the nature of the underlying offense, the more difficult the task becomes to show a basis for reinstatement," *In re Brown*, 166 W. Va. 226, 234, 273 S.E.2d 567, 571, and that "[m]isappropriation of funds by an attorney involves moral turpitude; it is an act infected with deceit and dishonesty." *Comm. on Legal Ethics v. Hess*, 186 W. Va. 514, 517, 413 S.E.2d 169, 172 (1991)(quoting *Att'y Grievance Commission. v. Ezrin,* 312 Md. 603, 609, 541 A.2d 966, 969 (1988)). Mr. Swisher's burden is necessarily high, and we do not believe he has met this burden.

In applying the five *Smith* factors to this matter, we believe the record demonstrates that Mr. Swisher has satisfied factors four – the time period elapsed since his suspension – and five – his present competence in legal skills. He has regularly attended West Virginia CLE programs since his suspension in 1998, twenty-two years ago. He has also worked for law offices in Pennsylvania for most of the period of his suspension. Indeed, a long period of time has elapsed since his suspension, he has worked in the law, and he has kept abreast of West Virginia law.

However, the application of factors one, two and three as set forth in *Smith* demonstrate that Mr. Swisher has not been rehabilitated. As to factors one and two, this Court found that Mr. Swisher had "dishonor[ed] the practice of law[,] because [his]

11

misconduct [was] prejudicial to the administration of justice." *Swisher*, 203 W. Va. 603, 606, 509 S.E.2d 884, 887. After his West Virginia suspension, Mr. Swisher proceeded to engage in conduct in Pennsylvania similar to that which resulted in the suspension of his West Virginia license, namely misappropriation of client funds. These actions would have made him subject to disbarment in this State, had he informed WVODC of the actions taken by Pennsylvania authorities. Continually lying and taking funds from clients cannot be attributed to a "rookie mistake." *In re Reinstatement of Drake*, 242 W. Va. 65, ___, 829 S.E.2d 267, 272 (2019). Thus, applying factor one outlined in *Smith*, relating to the nature of the offense, we find that such factor weighs against Mr. Swisher's reinstatement. Likewise, factor two, which calls upon us to consider the Petitioner's character, maturity, and experience at the time of his suspension, leads us to the conclusion that Mr. Swisher's reinstatement is not appropriate. Indeed, he continued to engage in similar conduct adverse to the interests of his clients in Pennsylvania, including the misappropriation of client funds, even after his West Virginia suspension. This conduct continued until the Pennsylvania Supreme Court intervened. Mr. Swisher clearly engaged in a long-term pattern of deceit toward his clients.

If factors one and two of *Smith* were not enough to cause this Court great pause when considering this petition, factor three – "the petitioner's occupations and conduct in the time since his disbarment" – make it clear that Mr. Swisher should not be reinstated. Although Mr. Swisher has worked as a part-time law clerk in Pennsylvania since his suspension, his overall conduct since his suspension in West Virginia, specifically

12

his failure to notify the WVODC of Pennsylvania's actions and his failure to make restitution in Pennsylvania, weigh against his reinstatement.

a. Notification to West Virginia Office of Disciplinary Counsel

Mr. Swisher argues that he did not inform the WVODC about the actions taken in Pennsylvania regarding his law license "because he did not realize that he had to so notify them." We find no merit in this argument and agree with the WVODC's position that Mr. Swisher's disbarment in Pennsylvania and subsequent failure to inform West Virginia authorities of that disbarment simply cannot be ignored.

After a long process, Mr. Swisher voluntarily surrendered his Pennsylvania law license when he was disbarred in that State by consent. That action took place four years after his West Virginia license had been suspended by this Court. *See Swisher*, 203 W. Va. 603, 509 S.E.2d 884. Our rules are clear:

> A final adjudication in another jurisdiction, whether state or federal, of misconduct constituting grounds for discipline of a lawyer or a voluntary surrender of a license to practice in connection with a disciplinary proceeding shall, for the purposes of proceedings pursuant to these rules conclusively establish such conduct. Accordingly, a Hearing Panel Subcommittee may take action without conducting a formal hearing.

*W. Va. R. Disciplinary P.*, Rule 3.20(a). Until Mr. Swisher filed his Petition for Reinstatement, the WVODC was unaware of the actions taken in Pennsylvania. This is because Mr. Swisher never informed WVODC of Pennsylvania's action. Regardless of

13

the fact that Mr. Swisher's license to practice in West Virginia was suspended, we deem Mr. Swisher's decision to not inform WVODC of the disciplinary action in Pennsylvania to be a violation of Rule 3.20(b), which provides:

> Any lawyer who is a member, active or inactive, of The West Virginia State Bar against whom any form of public discipline has been imposed by the authorities of another jurisdiction, whether state or federal, or who voluntarily surrenders his or her license to practice law in connection with disciplinary proceedings in another jurisdiction, whether state or federal, shall notify the Office of Disciplinary Counsel of such action in writing within ten days thereof. Failure to notify the Office of Disciplinary Counsel shall constitute an aggravating factor in any subsequent disciplinary proceeding.

*W. Va. R. Disciplinary P.*, Rule 3.20(b). Mr. Swisher's failure to timely inform WVODC deprived WVODC of its ability to investigate the actions taken in Pennsylvania and determine whether West Virginia should take reciprocal action:

> Upon receiving notice that a lawyer who is a member, active or inactive, has been publicly disciplined or has voluntarily surrendered his or her license to practice law in another jurisdiction, whether state or federal, Disciplinary Counsel shall, following an investigation pursuant to these rules, refer the matter to a Hearing Panel Subcommittee for appropriate action.

*W. Va. R. Disciplinary P.*, Rule 3.20(c).

Mr. Swisher argues that he had no duty to report Pennsylvania's actions to West Virginia as his West Virginia license was suspended at the time Pennsylvania acted. In other words, Mr. Swisher contends that the suspension of his West Virginia license also suspended the application of West Virginia's Rules of Disciplinary Procedure. However,

14

by their very language, many of our rules of Lawyer Disciplinary Procedure expressly apply to lawyers whose law licenses have been annulled or suspended, as well as to those who have been disbarred. *See, e.g., W. Va. R. Disciplinary P.*, Rules 3.17 (effect of suspension or annulment); 3.28 (duties of disbarred or suspended lawyers); 3.30 (requirements for reinstatement); 3.31 (automatic reinstatement following suspension); 3.32 (reinstatement procedure following suspension); 3.33 (reinstatement procedure following annulment). Additionally, this Court has applied the Rules of Lawyer Disciplinary Procedure to suspended lawyers who have failed to comply with the rules following their suspension:

> A suspended attorney who fails to comply with the provisions of [Rule 3.28 of the Rules of Lawyer Disciplinary Procedure] may have his or her license to practice law annulled upon proof by the [Lawyer Disciplinary Board] by full, preponderating and clear evidence that the suspended attorney failed to comply with the provisions.

Syllabus Point 3, *Comm. on Legal Ethics v. Keenan*, 192 W. Va. 90, 450 S.E.2d 787 (1994). Likewise, in *Lawyer Disciplinary Bd. v. Viewig*, 194 W. Va. 554, 557, 461 S.E.2d 60, 63 (1995), this Court annulled a suspended lawyer's law license following that lawyer's felony guilty plea. *See also Lawyer Disciplinary Bd. v. Hart,* 241 W. Va. 69, 89, 818 S.E.2d 895, 915 (2018)(failing to comply with Rule 3.28 of the Rules of Lawyer Disciplinary Procedure warrants annulment of suspended lawyer's law license). Thus, the Rules clearly apply to suspended lawyers, thereby requiring Mr. Swisher to inform WVODC of the disciplinary actions taken in Pennsylvania. His failure to do so weighs against his argument that he

15

possesses the "requisite integrity and moral character to resume the practice of law." *Comm. on Legal Ethics v. Pence*, 171 W. Va. 68, 73, 297 S.E.2d 843, 848 (1982).

b.      Payment of Restitution

Most troubling to this Court is Mr. Swisher's contention that he will enter into a payment plan to satisfy his outstanding debts to Pennsylvania, "if made a condition of his reinstatement." Mr. Swisher directs this Court to a number of cases he maintains support his contention that his willingness to pay restitution in the future warrant his reinstatement. However, none of the cases cited by Mr. Swisher overcome the fact that he has made no effort to remedy the adverse consequences of his prior actions by actually beginning to pay the restitution he owes.

First, Mr. Swisher cites *Lawyer Disciplinary Bd. v. Viewig*, 194 W. Va. 554, 461 S.E.2d 60, for the proposition that this Court has made the repayment of prior debts a condition of reinstatement. However, in *Viewig*, this Court made "the **continue[d]** repay[ment] of past debts" a condition of reinstatement. *Id.*, 194 W. Va. 554, 560, 461 S.E.2d 60, 66 (emphasis added). Mr. Viewig had already begun repaying his past debts when he sought reinstatement by this Court. The same cannot be said for Mr. Swisher. He only offers to satisfy his debts if he is reinstated.

Mr. Swisher also cites *Lawyer Disciplinary Bd. v. Pence*, 194 W. Va. 608, 461 S.E.2d 114 (1995), to demonstrate that he has met the requisite standard for

16

reinstatement. Again, we do not see how that case bolsters his position. Indeed, in *Pence*, the reasons cited by this Court for denying one of Mr. Pence's petitions for reinstatement was the fact that he, like Mr. Swisher, had not yet paid the amounts he owed as a result of his prior conduct. In *Pence*, this Court found:

> On August 7, 1985, Mr. Pence filed his third petition for reinstatement. We summarily dismissed that petition when we learned that Mr. Pence had not yet paid the $22,210.52 in costs and expenses that the Committee had incurred during certain prior proceedings. We instructed Mr. Pence that he could not file another petition for reinstatement until he had reimbursed the amount of costs and expenses owing.

*Id.*, 194 W. Va. 608, 610, 461 S.E.2d 114, 116. Thus, *Pence* actually undermines Mr. Swisher's position.

This Court recently decided *In re: Reinstatement of Drake*, 242 W. Va. 65, 829 S.E.2d 267 (2019), a case similar in material respects to the present matter. In that matter, Mr. Drake had entered an Alford/Kennedy plea to the crime of embezzlement. *See id.*, 242 W. Va. 65, ___, 829 S.E.2d 267, 269. Thereafter, Mr. Drake's law license was annulled. *See id.* Following the five-year mandatory waiting period, he filed a petition for reinstatement. *See id.*, 242 W. Va. 65, ___, 829 S.E.2d 267, 269-270. The HPS recommended the request be denied and the WVODC agreed with that recommendation. *See id.*, 242 W. Va. 65, ___, 829 S.E.2d 267, 270.

On these facts, this Court found "that Mr. Drake did not prioritize restitution and did not exercise reasonable and diligent efforts to fulfill these obligations until he came

17

before this Court seeking reinstatement of his law license." *Id*., 242 W. Va. 65, ___, 829 S.E.2d 267, 273. This is precisely the situation here. Mr. Swisher has made no effort to make the restitution in Pennsylvania he was ordered to make, and he gives no assurance to this Court he will do so unless this Court makes such restitution a condition of reinstatement.

It is undeniable that Mr. Swisher's actions have harmed many clients who placed their trust in him to represent them. Perhaps the most convincing step Mr. Swisher could have taken to demonstrate that his reinstatement is warranted would have been to have made a good faith effort to begin making restitution for such harm. This he has not done and his conduct simply does not establish that he is entitled to reinstatement under the *Smith* factors. Further, his reinstatement would not fulfill the primary goal of the lawyer disciplinary process, namely "the protection of the public and the reassurance of the public as to the reliability and integrity of attorneys." *Pence,* 161 W. Va. 240, 253, 240 S.E.2d 668, 675 (1977). Accordingly, we deny his petition for reinstatement.

## IV. CONCLUSION

We adopt the recommendation of the HPS and deny the petition for reinstatement. The costs of this proceeding are to be assessed against Mr. Swisher.

Petition denied. Costs assessed.